UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT SMITH,

        Plaintiff,                        Case No. 1:17-cv-759

v.                                          Honorable Janet T. Neff

SHIRLEY HARRY et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act (PLRA), PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Harry, Kowalski, Smith, Cummings, Lane, Watson, and Boykin. The Court will allow the action to proceed against the unidentified mail room employees.

**Discussion**

I.  Factual allegations

Plaintiff Scott Smith is an inmate at Earnest C. Brooks Correctional Facility ("MSP"), a facility run by the Michigan Department of Corrections ("MDOC"). Defendants are: Warden Shirley Harry; Deputy Wardens Unknown Kowalski and B. Smith; Resident Unit Managers ("RUMs") Unknown Cummings and Unknown Lane; Assistant Resident Unit Supervisor ("ARUS") Unknown Watson; Prisoner Counselor Unknown Boykin; and unidentified individuals from the MSP mail room.

Plaintiff alleges that the circumstances underlying his complaint began on July 26, 2016, when staff at MSP conducted an administrative hearing to determine the location of his legal papers and why he was having difficulty obtaining them. (Compl., ECF No. 1-3, PageID.25.) His legal papers consisted of the court file from his 2013 criminal case. His mother had made copies of the file and sent it to him in the mail so that he could file a motion challenging his conviction. He contends that unidentified mail room staff at MSP rejected his papers because they were considered "too voluminous." (*Id.*) Mail room staff allegedly relied upon an internal memorandum from 2008 for their decision.

Plaintiff alleges that he received two notices of intent to conduct a hearing ("NOIs") regarding the rejection of his mail, but no hearing took place until after his mail was destroyed by unidentified mail room staff. Prisoner Counselor Boykin allegedly postponed the hearing because ARUS Watson was not available. By the time that Watson conducted the hearing, Plaintiff's papers had already been destroyed. Plaintiff complains that Warden Harry, Deputy Warden Kowalski, Deputy Warden Smith, RUM Cummings, RUM Lane, and ARUS Watson allegedly investigated the disappearance of Plaintiff's papers in response to his grievances, but did not correct the issue.

Plaintiff also complains that ARUS Lane failed to stop the destruction of his papers before Plaintiff received an administrative hearing, and then covered up the actions of mail room staff after they destroyed Plaintiff's papers. In addition, ARUS Watson allegedly "altered a government document prepared pursuant to an Administrative Hearing after [the] fact" to cover up the destruction of his papers by mail room staff. (*Id.*, PageID.28.) Plaintiff contends that the destruction of his legal papers prevented him from filing a timely federal petition for habeas corpus relief. He was not able to file his petition until sixteen months after his sentencing. He contends that his petition cannot succeed unless the court decides that he is eligible for equitable tolling. Plaintiff claims that he has been denied his rights under the Fifth, Sixth, and Fourteenth Amendments as a result of Defendants' conduct, including his right of access to the courts. In addition, he contends that Defendants have "violated their oaths of office under state law and the Michigan constitution." (*Id.*, PageID.29.) As relief, he seeks compensatory and punitive damages.

II.  <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Supervisory Liability**

1. <u>Defendants Harry, Kowalski, Smith, and Cummings</u>

Plaintiff alleges that Warden Harry, Deputy Wardens Kowalski and Smith, RUMs Cummings and Lane, and ARUS Watson investigated Plaintiff's grievances and failed to correct the actions of other prison employees. These are his only allegations against Defendants Harry, Kowalski, Smith and Cummings. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active

unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Harry, Kowalski, Smith, or Cummings engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them under § 1983.

2. Defendant Lane

In addition to the foregoing, Plaintiff alleges that RUM Lane failed to stop the destruction of Plaintiff's papers and "covered up" the actions of mail room staff. Lane's failure to stop the actions of other officials does not give rise to a claim. *See Grinter*, 532 F.3d at 576 ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983.") (quoting *Shehee*, 199 F.3d at 300). Moreover, Plaintiff's assertion that Lane "covered up" the actions of other officials is too vague to state a plausible claim. Thus, Plaintiff does not state a claim against Defendant Lane under § 1983.

3. Defendant Watson

Similarly, Plaintiff alleges that ARUS Watson altered a government document in order to cover up the actions of the mail room staff, and informed Plaintiff that he would not be permitted to receive his legal papers because of the memorandum from 2008. These allegations are likewise

insufficient. Plaintiff's allegation that Watson altered an unidentified document is too vague to state a plausible claim. In addition, the fact that Watson informed Plaintiff of the reason that Plaintiff did not receive his papers does not suffice to state a claim against Watson. Plaintiff does not allege that Watson made the decision to deny Plaintiff access to his papers or was responsible for their destruction. According to Plaintiff, by the time that Watson held a hearing on the issue, the papers had already been destroyed. Thus, Plaintiff does not state a claim against Watson under § 1983.

**B. Due Process**

Plaintiff's allegation that the mail room officials interfered with the receipt of his mail implicates a liberty interest protected by the Fourteenth Amendment. Prisoners have a liberty interest in receiving uncensored communication,[1] and this liberty interest is protected by due process. *Procunier v. Martinez*, 416 U.S. 396, 417 (1974), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). The fundamental requirement of due process is the right to be heard "at a meaningful time and in a meaningful manner." *Mertik v. Blalock*, 983 F.2d 1353, 1364 (6th Cir. 1993) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). With respect to incoming mail, the decision to censor such mail must be accompanied by "minimal

---

[1] A prisoner's right to receive mail is protected by the First Amendment. *See Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009).

procedural safeguards," such as notice and an opportunity to be heard. *See Procunier*, 416 U.S. at 417-19. It is sufficient that the prisoner receives notice that his mail is being rejected, has a reasonable opportunity to protest that decision, and receives review by an official other than the person who originally disapproved the correspondence. *Id.* at 418. Construing Plaintiff's complaint generously, he asserts that he did not have a reasonable opportunity to protest the rejection of his mail because prison officials in the mail room destroyed it before his hearing.

### 1. Mail Room Officials

At a minimum, Plaintiff's allegations suffice to state a due process claim against the unidentified mail room officials, who allegedly withheld his mail and destroyed it before he received a hearing.[2]

### 2. Defendant Boykin

Plaintiff's only allegation against Defendant Boykin is that she postponed his mail-rejection hearing until after Watson returned from vacation. This is not sufficient to state a claim. Due process generally requires an opportunity to be heard "at a meaningful time"; it does not require a hearing within a set period of time. Plaintiff does not allege that Boykin postponed the hearing indefinitely or for such an unreasonable period of time that Plaintiff was effectively denied access to his mail without a hearing. Moreover, Plaintiff has not alleged any facts indicating that Boykin is responsible for the interference with Plaintiff's mail or the destruction of his papers. Thus, Plaintiff does not state a due-process claim, or any other federal constitutional claim, against Defendant Boykin.

---

[2]Because the Court finds that Plaintiff states at least one type of claim against the mail room officials, it does not determine whether Plaintiff also states other claims against them, such as a First Amendment claim or an access-to-the-courts claim.

In short, Plaintiff does not state a claim against Defendants Harry, Kowalski, Smith, Cummings, Lane, Watson, or Boykin under § 1983.

III. Supplemental Jurisdiction

To the extent that Plaintiff asserts claims against Defendants Harry, Kowalski, Smith, Cummings, Lane, Watson, and/or Boykin under state law, the Court declines to exercise supplemental jurisdiction over such claims. *See* 28 U.S.C. § 1367(c)(3). "Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Accordingly, the Court will dismiss all claims against Defendants Harry, Kowalski, Smith, Cummings, Lane, Watson, and Boykin, including his claims under state law as well as his claims under § 1983.

IV. Service of the Complaint

After dismissal of Defendants Harry, Kowalski, Smith, Cummings, Lane, Watson, and Boykin, the only defendants remaining in this action are the unnamed mail room employees at MSP. At this stage, the Court would typically order the United States Marshals Service to serve the complaint on the remaining defendants. In this case, however, Plaintiff has not provided sufficient information to identify the remaining defendants. Thus, it is not possible for the U.S. Marshals to serve them with a copy of the complaint.

According to the Federal Rules, a plaintiff has 90 days from the date of filing a complaint to serve it on the defendants. Fed. R. Civ. P. 4(m). If the plaintiff does not do so, the Court must dismiss the action without prejudice (after notice to the plaintiff) or order service within a specified time. The Court will give Plaintiff ninety days to identify the unnamed mail room officials so that

the Court can order service of the complaint.[3] If he does not do so, the Court will dismiss the remainder of his complaint without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Harry, Kowalski, Smith, Cummings, Lane, Watson, and Boykin will be dismissed. Plaintiff fails to state a claim against them under 42 U.S.C. § 1983, and the Court declines to exercise supplemental jurisdiction over any claims against them under state law. The Court will allow Plaintiff's claims to proceed against the unidentified mail room defendants at MSP. Without their names, however, the Court lacks sufficient information to serve the complaint on them at this time. Thus, the Court will give Plaintiff ninety days to identify the mail room defendants. If he does not do so, his claims against them will be dismissed without prejudice.

An Order consistent with this Opinion will be entered.

Dated: November 3, 2017  /s/ Janet T. Neff
　　　　　　　　　　　　　　　Janet T. Neff
　　　　　　　　　　　　　　　United States District Judge

---

[3] The Court will give Plaintiff ninety days from the date of this Opinion, rather than the date that he filed the complaint, because he was not permitted to serve the complaint until after the Court reviewed it under the PLRA.